IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CRAIG A. JACKSON,
          Plaintiff,

vs.                                          Case No.:  3:17cv791/RV/EMT

JULIE L. JONES, et al.,
          Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on a motion to dismiss filed by Defendants Jones
and Coker (ECF No. 26).  Plaintiff filed a response in opposition to the motion (ECF
No. 78).[1]  The case was referred to the undersigned for the issuance of all preliminary
orders and any recommendations to the district court regarding dispositive matters.
*See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).
After reviewing the parties' submission and the relevant law, the undersigned
concludes Defendants' motion to dismiss should be granted.

I.       BACKGROUND

---

[1] Plaintiff's response also addresses the motions to dismiss filed by Defendant Nurse Melvin,
Defendant Centurion, and Defendant Nurse Simpson (*see* ECF Nos. 32, 38, 57, 78).  The court will
address these motions, and Plaintiff's response as to these motions, in a future Report and
Recommendation.

Plaintiff, an inmate of the Florida Department of Corrections ("FDOC"), proceeding pro se and in forma pauperis, commenced this case on October 31, 2017, by filing a civil rights complaint under 42 U.S.C. § 1983 (ECF No. 1). Presently before the court is Plaintiff's Amended Complaint (ECF No. 7). Plaintiff names eight Defendants: (1) Julie L. Jones, former Secretary of the FDOC, (2) Jimmy Coker, former warden of Santa Rosa Correctional Institution, (3) Centurion of Florida, LLC ("Centurion"), a private medical services provider under contract with the FDOC to provide medical services to FDOC inmates, (4) Dr. Lee Brown, an employee of Corizon Health, a different FDOC medical contractor, and the former medical director of Santa Rosa C.I., (5) Dr. Denis Vilchez, a former member of the medical staff at Santa Rosa C.I., (6) Dr. W.D. Rummel, an employee of Centurion and the former Chief Health Officer at Santa Rosa C.I., (7) Nurse S. Simpson, an employee of Centurion and a registered nurse at Santa Rosa C.I., and (8) Nurse S. Melvin, an employee of Centurion and an advanced registered nurse practitioner ("ARNP") at Santa Rosa C.I. (*see id.* at 1, 3–5). Plaintiff claims that Defendants subjected him to cruel and unusual punishment, in violation of the Eighth Amendment, by exhibiting deliberate indifference to his medical needs (*id.* at 6). Plaintiff also brings state law claims of negligence and medical malpractice (*id.*). Plaintiff alleges he suffered pain as a result of Defendants' conduct (*id.* at 6). As relief, Plaintiff seeks compensatory

damages in the amount of $200,000 from each Defendant (*id.* at 12–13). Plaintiff also seeks injunctive relief (*id.*).[2]

Defendants Jones and Coker filed a motion to dismiss, contending Plaintiff's Eighth Amendment claims are subject to dismissal for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 26). Defendants also contend the Eleventh Amendment bars Plaintiff's claims for monetary damages against them in their official capacities (*id.*).

Plaintiff filed a response in opposition to Defendants' motion (ECF No. 78).

## II.    JACKSON'S FACTUAL ALLEGATIONS

The Amended Complaint sets forth the factual allegations that follow (*see* ECF No. 7). In 1997, Plaintiff suffered injury to his head, right arm, pelvis, and back, as a result of being hit by a truck (*id.* at 6–7). Plaintiff also suffers from degenerative arthritis, high blood pressure, and diabetes (*id.*). In 1998, Plaintiff began receiving disability benefits as a result of his medical condition (*id.*). Upon Plaintiff's arrival in the FDOC in 2002, his medical condition was documented in his inmate medical records (*id.*).

---

[2] Plaintiff requests, "To be provided an MRI exam, to be seen by a nerve specialist, demotion in both position and wages of each Defendant, also required educational training in advance effective [sic] communication skills, and behaviour [sic] management, plus more for each of the Defendants" (ECF No. 7 at 12–13).

Case No.: 3:17cv791/RV/EMT

After Plaintiff's repeated visits to the medical department for complaints of severe pain in his left shoulder and arm, and the left side of his neck, Plaintiff was seen by Defendant Dr. Brown in October of 2015 at Santa Rosa C.I. (ECF No. 7 at 7). Dr. Brown ordered x-rays, and the x-rays were taken on November 4, 2015 (*id.*). Shortly after the x-rays were taken, Dr. Brown explained to Plaintiff that the x-rays showed he was suffering minor degenerative arthritis in his left shoulder (*id.*). Dr. Brown issued Plaintiff a medical pass on November 20, 2015, due to limited use of Plaintiff's right arm (*id.*). Plaintiff continued complaining of pain (*id.*). Dr. Brown continued Plaintiff's prescription for pain medication, but refused to order an MRI or CAT scan (*id.* at 7–8).

In April of 2016, Plaintiff was transferred to the Pinellas County Jail (ECF No. 7 at 8). Plaintiff questioned the medical staff about "agonizing pain" (*id.*). The nursing staff suggested Plaintiff may be suffering from a pinched nerve and advised Plaintiff to request an MRI when he returned to the FDOC (*id.*).

Plaintiff returned to Santa Rosa C.I. in June of 2016 (ECF No. 7 at 8). Prior to Plaintiff's visit with Defendant Dr. Vilchez on June 17, 2016, Plaintiff told Defendant Nurse Simpson what the jail's medical staff said, and Plaintiff questioned Nurse Simpson about an MRI (*id.*). Nurse Simpson responded that no one at Santa Rosa C.I. cared about what the jail medical staff said (*id.*).

Plaintiff complained of pain in sick-call requests, visits to the medical department, and administrative grievances (ECF No. 7 at 8). Defendants Dr. Vilchez, Dr. Rummel, and Warden Coker responded to Plaintiff's grievances (*id.*).

On September 15, 2016, Plaintiff was seen by Defendant Dr. Vilchez for complaints of pain (ECF No. 7 at 8–9). Dr. Vilchez ordered x-rays of Plaintiff's left arm, shoulder, and neck (*id.*). Dr. Vilchez issued a medical pass which included restricted activity, an "ADA bed," front handcuffs, and an extra blanket (*id.*). Plaintiff questioned Dr. Vilchez about an MRI (*id.*). The same day, Plaintiff was assigned to an "ADA bed" (*id.* at 9). A few days later, on September 18 or 19, Plaintiff was called to the medical department to be seen by Nurse Simpson regarding the results of the x-rays (*id.* at 8–10). Nurse Simpson told Plaintiff that the x-ray report indicated the results were normal (*id.* at 10). Nurse Simpson accused Plaintiff of malingering, but Plaintiff explained that the x-ray would not reveal a problem with a nerve (*id.*). Nurse Simpson replaced the medical pass which had been issued by Dr. Vilchez with a medical pass signed by Defendant ARNP Melvin (*id.* at 9). The new medical pass did not include an "ADA bed" or front cuffs (*id.*). Plaintiff was moved to a "regular" bed (*id.*).

In October or November of 2016, Plaintiff was seen by Nurse Simpson for a complaint of a lump or knot on his left shoulder (ECF No. 7 at 10). Nurse Simpson

stated she did not see a lump (*id.*).  Plaintiff asked Nurse Simpson to feel the lump, but she refused (*id.*).

In December of 2016, Plaintiff's family contacted the prison and complained that Plaintiff was not receiving adequate medical treatment for his pain (ECF No. 7 at 10).  Plaintiff was seen by a doctor, who may have been Defendant Dr. Rummel (*id.*).  The doctor explained that Plaintiff's medical records indicated he already should have been transferred to the Reception and Medical Center to see a specialist (*id.*).  The doctor explained that Dr. Vilchez attempted to effect the transfer, but "someone else" on the medical staff had "done things to cause a block" (*see* ECF No. 1 at 9–10).  The doctor assured Plaintiff that everything would be done to ensure that Plaintiff was transferred to the RMC "very soon" (ECF No. 7 at 10).

On December 14, 2016, Plaintiff arrived at RMC (ECF No. 7 at 10–11).  Plaintiff was seen by a physical therapist on December 20, 2016 (*id.* at 11).  The physical therapist felt Plaintiff's neck and stated that without a doubt, Plaintiff had a pinched nerve (*id.*).  The physical therapist felt the lump on Plaintiff's left shoulder and stated that Plaintiff's rotator cuff was damaged (*id.*).  Plaintiff asked the therapist if a pinched nerve could be diagnosed without an MRI, and the therapist responded that pinched nerves were diagnosed before the invention of MRI's (*id.*).  The physical therapist ordered four weeks of therapy, and told Plaintiff the therapy would help, but Plaintiff

would always have pain in his shoulder area (*id.*).  Plaintiff started physical therapy on February 14, 2017 (*id.*).  On March 7, 2017, after three weeks of therapy, Plaintiff refused additional therapy, because he continued to experience pain, and neither the therapist nor the doctor provided pain medication (*id.*).  The same day, Plaintiff was provided a fifteen-day supply of pain medication (*id.*).

Plaintiff alleges he returned to Santa Rosa C.I., and was seen by ARNP Melvin on May 4, 2017, which resulted in Melvin's issuing a new medical pass for front cuffs and no lifting or working with Plaintiff's right arm (*see* ECF No. 7 at 9; ECF No. 78 at 15).  Plaintiff alleges the  pass disregarded and ignored the "damaged nerve" in his left shoulder and arm (*id.*).

Plaintiff alleges that since October of 2015, he filed grievances with Warden Coker regarding the lack of adequate medical treatment by Centurion's employees (ECF No. 7 at 11).  Plaintiff alleges Warden Coker responded that the treatment provided by the Centurion medical staff was appropriate and adequate (*id.*).  Plaintiff alleges he appealed Warden Coker's responses to Secretary Jones (*id.* at 12).  Plaintiff alleges Secretary Jones responded that the Santa Rosa C.I. medical staff provided adequate medical care, and that Warden Coker "does his job and demands such" (*id.*).

III.    DISCUSSION

Secretary Jones and Warden Coker seek dismissal of Plaintiff's Eighth Amendment claim on the ground that the factual allegations of the Amended Complaint fail to state a claim upon which relief may be granted (*see* ECF No. 26).

Motions to dismiss for failure to state a claim are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. In applying that rule, the allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff. *See* Davis v. Monroe Cnty. Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006). The court may consider documents attached to a complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See* Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); Saunders v. Duke, 766 F.3d 1262, 1272 (11th Cir. 2014); Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal . . . .").

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quotation and citation omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are

conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

When brought by convicted prisoners, claims of deliberate indifference to serious medical needs proceed under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *See* Gilmore v. Hodges, 738 F.3d 266, 271 (11th Cir. 2013). Stating a claim of inadequate medical treatment requires satisfying two minima (from which the case law has ultimately derived four requirements). First, there must be, objectively speaking, conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation—one "denying 'the minimal civilized measure of life's necessities.'" Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish. *See* Wilson, 501 U.S. at 300 ("The source of the intent requirement is not the predilections of this Court, but

the Eighth Amendment itself, which bans only cruel and unusual *punishment*.  If the

pain inflicted is not formally meted out *as punishment* by the statute or the sentencing

judge, some mental element must be attributed to the inflicting officer before it can

qualify." (emphases in original)).

      In the context of denial of medical treatment, each of these minima has been

more specifically described as encompassing two subsidiary requirements.  To show

an objectively serious deprivation, it is necessary to demonstrate, first, an objectively

"serious medical need[ ]," Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed.

2d 251 (1976), one that, if left unattended, "pos[es] a substantial risk of serious harm,"

Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  A

serious medical need is "one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention."  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir.

2003).  Second, it is necessary to demonstrate that the response made by the public

official to that need was poor enough to constitute "an unnecessary and wanton

infliction of pain," and not merely accidental inadequacy, "negligen[ce] in diagnosi[s]

or treat[ment]," or even "[m]edical malpractice" actionable under state law, <u>Estelle</u>, 429 U.S. at 105–06.[3]

To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of "deliberate indifference," <u>Estelle</u>, 429 U.S. at 105, which is in turn defined as requiring two separate things: "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [ ] and . . . draw[ing of] the inference," <u>Farmer</u>, 511 U.S. at 837.

Ultimately, there are thus four requirements: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts. *See* <u>Taylor v. Adams</u>, 221 F.3d 1254, 1258 (11th Cir. 2000).

Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. *See* <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir.

---

[3] A corollary to this requirement for a great deal more than negligence is that a public official who does act reasonably in response to a serious medical need "cannot be found liable under the Cruel and Unusual Punishments Clause," <u>Farmer</u>, 511 U.S. at 845, "even if the harm ultimately was not averted," *id.* at 844.

1999) (citations omitted).  Where the case turns on an alleged delay in providing medical care, rather than the type of medical care provided, courts should consider: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay.  *See* Goebert v. Lee Cnty., 510 F.3d 1312, 1327 (11th Cir. 2007) (citation omitted).

In the prison context, the court must "distinguish between evidence of disputed facts and disputed matters of professional judgment."  Beard v. Banks, 548 U.S. 521, 530, 126 S. Ct. 2572, 165 L. Ed. 2d 697 (2006).  A medical decision not to pursue a particular course of diagnosis or treatment is a classic example of a matter for medical judgment, an exercise of which does not represent cruel and unusual punishment.  *See* Estelle, 429 U.S. at 107–08.

It is well established that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *See* Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983).  "Because vicarious liability is inapplicable to [ ] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.  Under Iqbal, "each Government official, his or her title notwithstanding, is only liable for his

or her own misconduct." *Id.*, 556 U.S. at 677. "[S]upervisors are liable under [section] 1983 'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)). Facts sufficient to establish a causal connection include those "which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Keating, 598 F.3d at 762 (internal quotation omitted). The factual allegations of the complaint must plausibly show that the supervisory official acted with the same mental state required to establish a constitutional violation against his subordinate; therefore, the court must first identify the precise constitutional violation charged and explain what the violation requires. *See* Franklin v. Curry, 738 F.3d 1246, 1250 (11th Cir. 2013). In the Eighth Amendment context, a defendant must (1) have a subjective awareness that the plaintiff's medical condition poses a substantial risk of serious harm, and (2) disregard that risk by conduct that is more than mere negligence. *See* Farrow, 320 F.3d at 1245.

Additionally, institutional staff who are not medical providers are not liable when they rely on the medical expertise of medical staff. *See* Keith v. DeKalb Cnty.,

Ga., 749 F.3d 1034, 1050 (11th Cir. 2014); *see also* Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (a claim of medical indifference cannot generally be against non-medical personnel, unless they personally involved themselves with a denial of treatment or deliberately interfered with the medical treatment). The law does not require that non-medical officials ignore the determination and recommendation of medical staff. *See* Keith, 749 F.3d at 1050; *see also* Miltier, 896 F.2d at 854 (prison officials are entitled to rely upon prison medical personnel to determine the medically proper course of treatment for an inmate, unless there is direct evidence to show that a warden or other supervisory official should not rely on this expertise).

Here, Plaintiff does not allege any facts suggesting that Secretary Jones or Warden Coker personally participated in any decision regarding medical treatment for the alleged pain in Plaintiff's left shoulder, arm, and neck. Nor does Plaintiff allege any facts suggesting that a policy or custom of either the FDOC or Santa Rosa C.I. was the moving force behind the alleged failure to provide, or any delay in providing, the medical treatment Plaintiff desired (i.e., an MRI and medical passes). Plaintiff's only factual allegations regarding Warden Coker and Secretary Jones are that they denied his administrative grievance appeals. This allegation, without more, is insufficient to state a plausible basis for liability as to Secretary Jones or Warden Coker. *See* Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[D]enial of a grievance,

by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); Grinter v. Knight, 532 F.3d 567, 576 (6th Cir. 2008); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory official who denied administrative grievance and otherwise failed to act based on information contained in the grievance); Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989) (holding that prisoner failed to state § 1983 claim against supervisory officials, where prisoner merely alleged the officials denied his grievance and did not allege they were personally involved in the alleged misconduct), aff'd, 915 F.2d 1574 (6th Cir. 1990); see also, e.g., Brown v. Comerford, No. 3:13cv572/LAC/CJK, 2014 WL 3586257, at *5 (N.D. Fla. July 21, 2014) ("[M]erely denying a grievance, without personally participating in the unconstitutional conduct . . . is insufficient to establish § 1983 liability."); Swift v. Tifft, No. 3:12cv171/RV/CJK, 2013 WL 5913796, at *9 (N.D. Fla. Oct. 31, 2013) (same). Therefore, Plaintiff's Eighth Amendment claims against Secretary Jones and Warden Coker should be dismissed with prejudice.

IV.    CONCLUSION

Accepting the allegations of Amended Complaint as true, and liberally construing them in the light most favorable to Plaintiff, the undersigned concludes that

Plaintiff's allegations do not state a plausible Eighth Amendment claim against Defendant Jones or Coker.  Therefore, the claims against them should be dismissed.

Accordingly, it is respectfully **RECOMMENDED**:

That the motion to dismiss filed by Defendants Coker and Jones (ECF No. 26) be **GRANTED**, and Plaintiff's federal claims against these Defendants be **DISMISSED WITH PREJUDICE**.

At Pensacola, Florida this 15<u>th</u> day of February 2019.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**